IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| TRISTAN SEDBROOK and CINDY SEDBROOK, individually and as guardians of MADISON SEDBROOK, a minor, | ) ) ) ) |
| Plaintiffs, | ) NO. _____ |
| v. | ) Demand for Jury Trial |
| NESTLE USA, INC., a foreign corporation, | ) ) |
| Defendant. | ) ) |

## COMPLAINT FOR DAMAGES

COME NOW the Plaintiffs, by and through their attorneys of record, Kara Knowles of Montgomery Little Soran & Murray, PC, and William D. Marler of Marler Clark LLP (admission *pro hac vice* pending), and allege as follows:

### I. PARTIES

1. Plaintiff Tristan Sedbrook lives in Englewood, Arapahoe County, Colorado. Plaintiff Cindy Sedbrook lives in Highlands Ranch, Douglas County, Colorado. Plaintiffs Tristan and Cindy Sedbrook are the natural parents of the minor child, Madison Sedbrook, who is six years old.

2. The Defendant, Nestle USA, Inc. (NESTLE), is a Delaware corporation, organized under the laws of the state of Delaware with its principal place of business located at 800 North Brand Boulevard, Glendale, California.

3. At all times relevant hereto, Nestle was a manufacturer and seller of various cookie dough products which are sold throughout the United States, including in the State of Colorado.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the State of Colorado such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

5. Venue in the United States District Court for the District of Colorado is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims and causes of action occurred in this judicial district—i.e., the Plaintiff's consumption of the Nestle cookie dough product that caused her *E. coli* O157:H7 illness. Additionally, the Defendant Nestle was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. GENERAL ALLEGATIONS

### Nestle *E. coli* O157:H7 Outbreak

6. On June 18, 2009, the Defendant Nestle announced a voluntary product recall after it was notified by the United States Food and Drug Administration (FDA) and the Centers for Disease Control (CDC) of a possible link between reported illnesses caused by *E. coli* O157:H7 and the consumption of Nestle-brand raw cookie dough.

7. As of June 19, 2009, 65 persons infected with a genetically indistinguishable strain of *E. coli* O157:H7 have been reported from 29 states. 25 persons have been hospitalized and 7 have developed hemolytic uremic syndrome (HUS).

## Plaintiff's Injuries

8. During the week before onset of her *E. coli* O157:H7 illness, Madison Sedbrook consumed Nestle cookie dough on several occasions at the homes of both of her parents, Cindy and Tristan Sedbrook, who had purchased the products at local grocery stores.

9. On or about April 20, 2009, Madison began to suffer from flu like symptoms, including pronounced fatigue and lethargy, mild fevers, and some nausea and vomiting. Madison Sedbrook's initial symptoms continued for approximately one week before they abated somewhat. She continued to consume Nestle cookie dough on occasion during this first week of illness and in the week before onset of more severe symptoms.

10. On or about May 4, 2009, Madison Sedbrook's symptoms became far worse, including a fever, bloody diarrhea, nausea, vomiting, and severe abdominal cramps. The same day, Cindy Sedbrook rushed her daughter to an emergency clinic for medical treatment in Highlands Ranch. At the clinic, Madison gave a urine sample, and a throat swab was done as well. She received prescriptions for Zofran, an anti-nausea drug, and antibiotics. Madison was then discharged home with her mother.

11. Symptoms worsened overnight on May 4, 2009, prompting a visit to her pediatrician the next day, May 5, 2009. After being seen by her pediatrician, Madison again went home with her mother for the night.

12. Madison Sedbrook's symptoms continued to worsen, causing her parents to rush her to the emergency department at Sky Ridge Medical Center on May 6, 2009. She submitted a stool sample for testing in the emergency department.

13. Madison Sedbrook was ultimately admitted to Sky Ridge Medical Center, where her symptoms persisted, despite intravenous hydration and treatment of her severe nausea.

Madison continued to vomit and suffer frequent bouts of bloody diarrhea throughout her stay at Sky Ridge Medical Center, which lasted through May 9, 2009.

14. After discharge from Sky Ridge Medical Center on May 9, 2009, Madison Sedbrook's symptoms became even worse. The frequency and intensity of her vomiting episodes increased, and her diarrheal stools consisted of mostly blood. She was unable to do anything but rest in her father's arms at his home.

15. Madison Sedbrook was seen by her pediatrician again on May 11 and 13, 2009, before blood tests revealed that she had developed hemolytic uremic syndrome. On the pediatrician's advice, Madison's parents rushed her to The Children's Hospital in Aurora, Colorado during the late evening hours of May 13, 2009.

16. After a short stay in the emergency department at The Children's Hospital, Madison was admitted to the pediatric intensive care unit for further care. She became severely anemic during her hospitalization at The Children's Hospital, requiring a blood transfusion on or about May 16, 2009. Madison was finally discharged from The Children's Hospital on May 18, 2009.

17. Madison Sedbrook's stool sample ultimately tested positive for *E. coli* O157:H7, and was later determined to match the strain of *E. coli* O157:H7 associated with the Nestle cookie dough outbreak. Madison continues to recover from her *E. coli* O157:H7-induced HUS illness. She has since had to endure regular blood draws to monitor her recovery.

18. The Plaintiffs have incurred and will continue to incur medical expenses, have suffered and will continue to suffer pain, loss of enjoyment of life, emotional distress, and medical problems in the future as a direct and proximate result of contaminated Nestle cookie dough product.

## IV.  CAUSES OF ACTION

### (Strict Product Liability)

19.    The Plaintiffs hereby incorporate paragraphs 1 through 18 by this reference as if each paragraph was set forth herein in its entirety.

20.    The Defendant is a product manufacturer within the meaning of the Colorado Product Liability Act, C.R.S. §§13-21-401 *et seq. ("Act").* Defendant manufactured the cookie dough that was the source of Plaintiffs' illness and legal injuries. The cookie dough that caused Plaintiffs' illness and legal injuries was a product within the meaning of the Act.

21.    Under the Act, Defendant owed a duty to the Plaintiffs to manufacture cookie dough that was not defective and that was reasonably safe. The cookie dough that caused Plaintiffs' illness and legal injuries was defective, and was unreasonably dangerous, because it was contaminated and adulterated with *E. coli* O157:H7.

22.    Because the Defendant manufactured the cookie dough that caused the Plaintiffs' illness and legal injuries, which was defective and not reasonably safe, the Defendant is strictly liable to the Plaintiffs for their personal injuries and related economic loss.

### (Breach of Warranties)

23.    The Plaintiffs hereby incorporate paragraphs 1 through 22 by this reference as if each paragraph was set forth herein in its entirety.

24.    Defendant owed a duty to the Plaintiffs to manufacture cookie dough that conformed to its express and implied warranties, including, but not limited to, the implied warranty of merchantability and the implied warranty of fitness for a particular use or purpose.

25.    The cookie dough manufactured and sold by the Defendant was contaminated with *E. coli* O157:H7, a pathogen that is harmful to health, and it would therefore not pass

without exception in the trade. The cookie dough manufactured and sold by the Defendant was thus in breach of the implied warranty of merchantability.

26.     The cookie dough manufactured and sold by the Defendant was contaminated with *E. coli* O157:H7, a pathogen that is harmful to health, and it was therefore not fit for the uses and purposes intended by either the Plaintiffs or the Defendant, *i.e.*, human consumption. The cookie dough manufactured and sold by the Defendant was thus in breach of the implied warranty of fitness for its intended use.

27.     Because the Defendant manufactured and sold cookie dough that was in breach of its express and implied warranties, Defendant is liable to the Plaintiffs for their personal injuries and related economic loss.

**(Negligence and Negligence *per se*)**

28.     The Plaintiffs hereby incorporate paragraphs 1 through 27 by this reference as if each paragraph was set forth herein in its entirety.

29.     Defendant owed the ultimate consumers of its products, including the cookie dough that caused the Plaintiffs' illness and associated legal injuries, a duty to use reasonable care in the storage, manufacture, and sale of food.

30.     Defendant breached its duties by, among other things, committing the following acts and omissions of negligence:

    a.      Failure to adequately maintain or monitor the sanitary conditions of its premises, employees, and food products, including the cookie dough, that it manufactured;

    b.      Failure to operate its premises in a safe, clean, and sanitary manner;

    c.      Failure to prevent the transmission of pathogens, including *E. coli* O157:H7, from its food products, including cookie dough, to the consumers of its products;

      d.      Failure to properly train employees and agents how to prevent the transmission of pathogens, including *E. coli* O157:H7, on its premises, or in its food products, including cookie dough;

      e.      Failure to properly supervise employees and agents to prevent the transmission of pathogens, including *E. coli* O157:H7, on its premises, or in its food products, including cookie dough;

      f.      Failure to maintain its premises in a clean, sanitary, and healthful manner.

31. Defendant was also negligent in manufacturing, distributing and selling cookie dough that was not reasonably safe because adequate warnings or instructions were not provided, including but not limited to the warning that the cookie dough was contaminated by *E. coli* O157:H7, a pathogen harmful to human health, and thus should not be given to, or eaten by, people.

32. Defendant also owed a duty to Plaintiffs to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of its food products, including cookie dough. These statutory and regulatory provisions included, but were not limited to, the Federal Food, Drug, and Cosmetics Act, which bans the manufacture, sale and distribution of any "adulterated" food. Defendant failed to observe this duty.

33. In the manufacture and production of its finished food products, including cookie dough, Defendant also had a duty to use supplies and/or raw materials that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from safe and reliable sources; and that were clean, wholesome, free from spoilage and adulteration, and safe for human consumption, but failed to do so.

34. The Plaintiffs are among the class of persons intended to be protected by the statutory and regulatory provisions pertaining to Defendant's manufacture, distribution, storage, labeling, and sale of food, including cookie dough.

35. As a result of the Defendant's negligent acts and omissions, and as a result of the Defendant's violation of statutes designed to protect the Plaintiffs from contaminated foods, including cookie dough, the Defendant is liable to the Plaintiffs for their personal injuries and related economic loss.

## DAMAGES

36. The Plaintiffs hereby incorporate paragraphs 1 through 35 by this reference as if each paragraph was set forth herein in its entirety.

37. Plaintiffs have suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of the defendant, which damages shall be fully proven at the time of trial, including, but not limited to, damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress and future emotional distress; pharmaceutical expenses, past and future; wage loss; and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. That the Court award Plaintiffs judgment against Defendant in such sum as shall be determined to fully and fairly compensate Plaintiffs for all general, special, incidental and

consequential damages incurred, or to be incurred, by them as the direct and proximate result of the acts and omissions of Defendant;

2. That the Court award Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred;

3. That the Court award Plaintiffs the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

That the Court award such other and further relief as it deems necessary and proper in the circumstances.

## JURY DEMAND

The plaintiff hereby demands a jury trial.

By: s/ Kara Knowles
Kara Knowles
Montgomery Little Soran & Murray, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Telephone: (303) 773-8100
E-mail: kknowles@montgomerylittle.com

William D. Marler, WSBA #17233
MARLER CLARK, LLP PS
701 First Avenue, Suite 6600
Seattle, WA 98104
Telephone: (206) 346-1888
E-mail: bmarler@marlerclark.com
(pending admission pro hac vice)

Attorneys for the Plaintiffs